UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NORBERTO NERIA ALVAREZ, et al., <br><br> Petitioners, <br><br> v. <br><br> JEFFERSON B. SESSIONS, et al., <br><br> Respondents. | Case No. 5:18-cv-05208-EJD <br><br> **ORDER DISMISSING CASE** |

On July 10, 2018, the Contra Costa County Sheriff announced his department would formally terminate its contract with Immigration and Customs Enforcement ("ICE") to house undocumented immigrants at the West County Detention Facility in Richmond, California.[1] Though this decision was supported by community organizers and activists, "the announcement was tempered by calls for detainees to be reunited with families rather than transferred to another facility."[2]

This habeas corpus action involves one of the most serious complications facing detainees who were transferred to another facility rather than released as a result of the Sheriff's decision. The Petitioners[3] are ten non-citizens with removal proceedings pending before the Immigration

---

[1] Aaron Davis, Contra Costa sheriff announces end of ICE contract, citing budget, 'growing chorus' of opposition (Jul. 10, 2018, 3:56 p.m.), https://www.eastbaytimes.com/2018/07/10/contra-costa-sheriff-says-hes-cancelling-contract-with-ice/

[2] Id.

[3] Petitioners are Norberto Israel Neria Alvarez, Mario Alexander Ixchop Perez, Adrian Boc Peinado aka Adrian Marroquin Flores, Raul Constancio Solis, Henrietta Elisabeth Sharp, Andres Hernandez Monterrosa, Jeffery Arnaldo Bonilla Maradiaga, Patricio Espinoza Velasco aka Juan

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

1

Court in San Francisco who were formerly housed at the West County Detention Facility. They are each represented by pro bono counsel based in the San Francisco Bay Area in connection with those proceedings. On August 16th and August 17, 2018, ICE transferred Petitioners to facilities in Tacoma, Washington and Aurora, Colorado. Petitioners allege the transfers will essentially leave them unrepresented, violating their right to counsel under the Fifth Amendment.

ICE's decision to detain Petitioners in locations so far from their attorneys is troubling and its motivation for doing so is questionable, particularly since several Petitioners were scheduled to appear in immigration court two weeks after the transfers. This court, however, lacks jurisdiction to do anything other than comment on ICE's irresponsible transfer decisions. Because Petitioners' right-to-counsel claims arise from their removal proceedings, this action must be dismissed.

## I. BACKGROUND

Petitioners are non-citizens from Mexico, Guatemala, Honduras and the former Yugoslavia who were ordered detained subject to ongoing removal proceedings venued in San Francisco. These proceedings are each at a different stage, though at least one petitioner - Bonilla Maradiaga - appears subject to a final removal order on appeal to the Board of Immigration Appeals. Several petitioners are represented in their removal proceedings by the San Francisco Public Defenders Office, while others are represented by different organizations or counsel based out of the San Francisco Bay Area.

Between August 16th and August 17, 2018, Petitioners were transferred from the West County Detention Facility in Richmond, California - a city adjacent to San Francisco - to other detention facilities in Tacoma, Washington and Aurora, Colorado. According to their pleadings, Petitioners and their attorneys were given little if any advance notice of the transfers, and some petitioners had master calendar hearings scheduled in immigration court in late August, September and October.

Petitioners allege their current detention in locations states-away from San Francisco

---

Carlos Espinoza Velasco, Fernando Dzip Xiu, and Miguel Angel Villalobos Cruz.
Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

2

significantly impacts the relationships with their attorneys and their ability to prepare their cases. None of Petitioners' current attorneys can continue with representation if Petitioners' removal proceedings are transferred to immigration courts in Washington or Colorado. And since Petitioners are indigent, they are unable to retain private counsel. Furthermore, Petitioners contend "[t]here is virtually no meaningful access to pro bono immigration counsel" in Tacoma or Aurora.

Petitioners initiated this habeas corpus action against the Attorney General, the Secretary of the Department of Homeland Security, the Acting Director of ICE, and the Acting ICE Field Office Director on August 24, 2018. Their petition asserts one claim for interference with and denial of access to counsel under the Fifth Amendment. Petitioners also filed a Motion for a Temporary Restraining Order ("TRO"), on which the court ordered briefing and a hearing. Dkt. Nos. 3, 7. The Government filed a timely opposition to the TRO motion on August 29, 2018, and the court heard from the parties at a hearing on August 31, 2018.

**II. DISCUSSION**

The Government argues in response to the TRO motion that the REAL ID Act of 2005's amendments to the Immigration and Nationality Act ("INA") strip this court of jurisdiction to review Petitioners' habeas challenge. The court agrees.

**A. Habeas Jurisdiction in Immigration Matters**

As Petitioners recognize in their jurisdictional allegations, the district court is generally vested with jurisdiction to grant a petition for writ of habeas corpus if a prisoner "is in custody in violation of the Constitution or laws treaties of the United States." 28 U.S.C. § 2241. Historically, the writ was "available to nonenemy aliens as well as to citizens," and "was not limited to challenges to the jurisdiction of the custodian, but encompassed detentions based on errors of law . . . ." I.N.S. v. St. Cyr, 533 U.S. 289, 301-302 (2001). Moreover, since the writ is at its strongest when the legality of executive detention is at issue, there must be a "clear statement of congressional intent" to repeal the court's ability to review such detention through habeas. Id. at 299-301.

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

3

From 1961 to 1996, "[h]abeas review remained available to a limited class of aliens, including those being held in detention subject to orders of exclusion," even though Congress had by that time provided that the courts of appeals were the "sole and exclusive" forum for judicial review of removal orders. Singh v. Gonzales, 499 F.3d 969, 975-76 (9th Cir. 2007). But in 1996, Congress began making "clear statements" limiting the courts' immigration habeas jurisdiction with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3546 (1996), and the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). "Through these two Acts, Congress repealed the provision allowing habeas review for certain aliens." Id. at 976.

In 2005, Congress enacted the REAL ID Act in response to the Supreme Court's decision in St. Cyr, which decision's "ultimate effect . . . was to allow criminal aliens more judicial review than they had" before IIRIRA and AEDPA, "and more review than accorded to non-criminal aliens." Id. at 977. Through the REAL ID Act, Congress sought to restore judicial review "to its former settled forum prior to 1996" by expressly eliminating habeas review over all final orders of removal and restoring jurisdiction over all constitutional claims and other questions of law in the appellate courts through the process known as Petition for Review ("PFR"). Id.; accord J.E.F.M v. Lynch, 837 F.3d 1026, 1033 n.5 (9th Cir. 2016) ("Congress has consistently sought to channel judicial review of immigration proceedings through the PFR process.").

**B.     8 U.S.C. § 1252**

Two provisions of the INA's jurisdictional statute, as amended by the REAL ID Act, are relevant to determining whether the court has jurisdiction over this action. The first is 8 U.S.C. § 1252(a)(5), which provides:

> Exclusive means of review
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

4

> For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

The second is 8 U.S.C. § 1252(b)(9), which provides:

> Consolidation of questions for judicial review
>
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

The Ninth Circuit, in accord with another circuit's observation, has described § 1252(b)(9) as "breathtaking" because it "swallows up virtually all claims that tied to removal proceedings." J.E.F.M., 837 F.3d at 1031 (quoting Aguilar v. ICE, 510 F.3d 1, 9 (1st Cir. 2007)). The provision is a "zipper clause" which consolidates all judicial review of immigration proceedings into one action in the court of appeals. Id. (citing St. Cyr, 533 U.S. at 313 & n.37). Thus, "[t]aken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue - whether legal or factual - arising from *any* removal-related activity can be reviewed *only* through the PFR process." Id. (emphasis in original). This channeling of claims to the appellate courts includes process and practices challenges which "arise from" removal proceedings. Id. at 1035.

### C. J.E.F.M.

Against this statutory backdrop, the Ninth Circuit decided J.E.F.M. in 2016.[4]

---

[4] At the hearing, counsel for Petitioners suggested the panel opinion in J.E.F.M. was subject to en banc consideration. The Ninth Circuit's docket, however, reveals only a pending motion for panel rehearing and rehearing en banc, filed on December 5, 2016. Under these circumstances, J.E.F.M. remains as law of the circuit which this court is bound to follow. See Chambers v. United States, 22 F.3d 939, 942 n.3 (9th Cir. 1994), vacated on other grounds, 47 F.3d 1015 (9th Cir. 1995) (holding that in the Ninth Circuit, "once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."); see also In re Zermeno-Gomez, 868 F.3d 1048, 1052 (9th Cir. 2017) (holding under the "law of the case"

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

5

There, immigrant minors placed in removal proceedings brought a class action complaint in district court asserting violations of their Fifth Amendment due process right to counsel and their statutory right to appointed counsel at government expense in immigration proceedings. The minors could not afford attorneys and had not obtained pro bono counsel for removal proceedings, yet were being compelled "to appear unrepresented in complex, adversarial court proceedings against trained [government] attorneys" for which they lacked the emotional and intellectual capacity to raise a right-to-counsel challenge. The minors alleged that if forced to wait and bring right-to-counsel claims through the PFR process, "they would be denied meaningful judicial review of their right-to-counsel claims if the district court lacked jurisdiction to hear the case." The district court granted in part and denied in part the Government's motion to dismiss the minors' complaint, holding it lacked jurisdiction over the statutory right-to-counsel claim but retained jurisdiction over the constitutional claim as a matter collateral to removal proceedings. The minors and the Government each filed interlocutory appeals, the former from the dismissal of the statutory claim and the latter from the denial of the motion to dismiss the constitutional claim.

The Ninth Circuit affirmed the dismissal of the statutory claim but reversed the denial of the motion to dismiss the constitutional claim, ultimately holding the district court had no jurisdiction over either claim. Id. at 1038-39. The court reasoned, after examining the history of the INA's jurisdictional sections and its 1996 and 2005 amendments, that the minors' right-to-counsel claims "must be raised through the PFR process because they 'arise from' removal proceedings." Id. at 1032-33. In addition, the court reasoned the minors' claims were neither ancillary to nor independent of the removal proceedings; "[r]ather, these claims are bound up in and an inextricable part of the administrative process. Id. at 1033.[5] More specifically, the court

---

doctrine, "a published decision of [the Ninth Circuit] constitutes binding authority 'which 'must be followed unless and until overruled by a body competent to do so.'").

[5] The Ninth Circuit agreed with the First Circuit's analysis of a similar issue: "[b]y any realistic measure, the alien's right to counsel is part and parcel of the removal proceeding itself . . . . [A]n alien's right to counsel possess a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned." J.E.F.M., 837 F.3d at 1033 (quoting Aguilar, 510 F.3d at 13).

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

6

found "that Congress intended to channel all claims arising from removal proceedings, including right-to-counsel claims, to the federal courts of appeals and bypass the district courts." Id.

### D. Application to the Instant Action

J.E.F.M. is indistinguishable from this case in the aspects critical to determining the court's jurisdiction. The J.E.F.M. court's interpretation of § 1252(a)(5) and § 1252(b)(9) therefore governs the outcome here.

Much like the minors did in J.E.F.M., Petitioners' frame their single claim as implicating their Fifth Amendment due process right to counsel.[6] Petitioners allege:

> Petitioners' pro bono counsel cannot continue to represent their clients in jurisdictions beyond San Francisco. None of the Petitioners have financial means to retain private attorneys in Colorado or Washington. There are few, if any, meaningful opportunities to secure pro bono representation in Tacoma, Washington or Aurora, Colorado. Petitioners will be unrepresented if their proceedings are transferred outside San Francisco.
>
> These transfers violate Petitioners' right to counsel by destroying their established relationship with their attorney, leaving them alone to navigate the byzantine immigration laws while detained . . . .

Pet., Dkt. No. 1, at ¶¶ 4-5.

J.E.F.M. teaches, however, that Petitioners' challenge based on the potential loss of counsel "arises from" their removal proceedings and can only be raised through the PFR process, as required by § 1252(a)(5) and § 1252(b)(9). See J.E.F.M., 837 F.3d at 1032-33. This makes sense when examined along with Congress' intent in enacting the REAL ID Act; unlike issues truly collateral or ancillary to a removal proceeding, claims based on violations of the right to counsel during a removal proceeding are "zipped up" for review into one action by § 1252(b)(9) and eventually channeled to the court of appeals through the PFR process. Id. at 1031.

Distinctions between the minors' claims in J.E.F.M. and Petitioners' instant claims do not alter the jurisdictional analysis. That Petitioners raise disruption to an established representation

---

[6] Though counsel's argument was not entirely clear on this point, Petitioners indicate in their papers they do not directly challenge the Attorney General's ability to transfer them from one facility to another as a general matter, and concede the Attorney General may determine where non-citizens should be detained during removal proceedings. Mot., Dkt. No. 3, at 6:21-7:6.

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

7

relationship rather than a denial of representation, or believe their circumstances unprecedented, or classify their requested relief as less impactful when compared to J.E.F.M, are facts of no moment. There is no exception to § 1252(b)(9) for unprecedented, extraordinary, or less impactful circumstances, but instead one for "claims that are independent of or collateral to the removal process." Id. at 1032. But the nuances relied upon by Petitioners do not transform their claim into an ancillary or collateral issue, such that Petitioners' situation more closely resembles the unique facts addressed in Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006), or Singh v. Gonzales, supra, than it does the facts of J.E.F.M.[7] The right placed at issue by the Petition filed in this case still arises under the Fifth Amendment, as did the minors' right in J.E.F.M., and is unquestionably "bound up in and an inextricable part of the administrative process." Id. at 1033. The authorities cited by Petitioners which seemingly justify district court intervention to rectify interference with an immigrant's attorney-client relationship, such as Committee of Central American Refugees v. Immigration and Naturalization Service, 682 F. Supp. 1055 (N.D. Cal. 1988), were decided prior to the 1996 and 2005 amendments to the INA and are inapplicable for that reason.

Nor is the court persuaded that Jennings v. Rodriguez, 138 S. Ct. 830 (2018), confers it with jurisdiction over Plaintiffs' claims. In Jennings, the Supreme Court held § 1252(b)(9) did not foreclose its own jurisdiction to review a Ninth Circuit decision imposing a six-month implicit time limit on an immigrant's detention. 138 S. Ct. at 840. In reaching that conclusion, the Court counseled against an expansive reading § 1252(b)(9)'s "arising from" language so to avoid "staggering results." Id. The Court explained that though several types of injuries could be said to "arise from" actions to remove an immigrant - such as injuries that could support claims under

---

[7] Because they also addressed issues ancillary or collateral to removal proceedings, the other cases cited by Petitioners at the hearing - Medina v. U.S. Dep't of Homeland Sec., No. C17-218-RSM-JPD, 2017 WL 2954719 (W.D. Wash. Mar. 14, 2017); Lai v. United States, No. C17-1704-JCC, 2018 WL 1610189 (W.D. Wash. Apr. 3, 2018); Innovation Law Lab v. Nielsen, No. 3:18-cv-01098-SI, 310 F. Supp. 3d 1150 (D. Or. 2018); and Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1876907 (N.D. Cal. Apr. 19, 2018) - do not assist them in demonstrating district court jurisdiction.

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

8

Bivens,[8] or common law claims for assault or negligence - "cramming judicial review of those into the review of final removal orders would be absurd." Id. Furthermore, the Court noted that interpreting "arising from" in an extreme way would "make claims of prolonged detention," like the one before it in Jennings, "effectively unreviewable." Id.

Here, the court need not employ an expansive interpretation of § 1252(b)(9)'s "arising from" language to find that right-to-counsel claims, like those of Petitioners, fall squarely within the purview of the provision. See J.E.F.M., 37 F.3d at 1033. Moreover, "cramming" issues related to legal representation during removal proceedings into the PFR process neither creates an absurdity in the way contemplated by the Supreme Court in Jennings, nor places those decisions outside of meaningful judicial review.

Finally, the court observes that the procedural vehicle through which Petitioners' claim appears makes no difference to the analysis of jurisdiction. See Martinez v. Napolitano, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)."). Whether the claim can present in a civil complaint, as in J.E.F.M., or through habeas, as here, § 1252(a)(5) and § 1252(b)(9) by their plain terms still channel an "arising from" claim through the PFR process to the courts of appeals, bypassing the district court. See Singh, 499 F.3d at 978 (holding that post-REAL ID Act cases considering the applicability of § 1252 in the habeas context "have [] distinguished between challenges to orders of removal and challenges that arise independently"); see also Nadarajah, 443 F.3d at 1076 (holding that a habeas petition did not invoke § 1252(b)(9)'s jurisdiction-stripping provision because it involved a detention challenge apart from removal proceedings). Indeed, § 1252(b)(9) specifically precludes any court from reviewing through habeas corpus any question of law or fact arising from removal proceedings, including right-to-counsel challenges. See J.E.F.M., 837 F.3d at 1033.

---

[8] This shorthand term references another Supreme Court case, Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

9

Based on the foregoing discussion, the court concludes that Petitioners' Fifth Amendment claims arise from their removal proceedings, and must be raised through the PFR process to the court of appeals. Because this court lacks jurisdiction to consider their claims, in habeas or otherwise, Petitioners' action must be dismissed.

### E. Final Comments

The lack of jurisdiction over Petitioners' claims does not preclude the court from commenting on the incomplete and damaging process that ICE employed to transfer Petitioners. ICE's policy on detainee transfers requires it employ a "thorough and systematic review of the most current information available" when undertaking a transfer determination.[9] If this review reveals documentation to support the presence of immediate family in the area of responsibility; an attorney of record in the area of responsibility; pending or on-going removal proceedings, where notification has been given within the area of responsibility; or a granted bond or scheduled bond hearing, ICE "*will not transfer a detainee.*" Every Petitioner in this case was represented by an attorney within the San Francisco area of responsibility, but every Petitioner was inexplicably transferred out of state, contrary to the policy. Thus, though ICE's policy may have admirable goals as written, it has no purpose if it is so easily disregarded. ICE offered no response in this action to its flagrant failure to comply with its own directives other than to say it conducted a review of other issues, and its silence is deafening.

To make matters worse, it was revealed at the hearing that some of Petitioners' cases were already transferred to immigration courts in other states. The speed at which this occurred - again without regard for the presence of counsel in San Francisco - is troubling. As a matter of optics, a policy which condones the movement of detained, represented immigrants without notice to their counsel, and leads to the immediate transfers their cases out of the area, does little to inspire public confidence in the executive's ability to fairly and responsibly adjudicate immigration cases.

As the court understands the circumstances, there was still approximately two months

---

[9] ICE Transfers Policy No. 11022.1 (Jan. 4, 2012), https://www.ice.gov/doclib/detentionreform/pdf/hd-detainee-transfers.pdf.

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

10

remaining before ICE's contract with Contra Costa County finally terminated. Yet, represented immigrants like Petitioners with hearings scheduled for the same week, and indeed same day, as the TRO hearing were transferred to Washington and Colorado. Other than a lack of "bed space," which quantum is apparently constantly in flux, no justification was given for the timing of Petitioners' transfers. And it is similarly unclear why Petitioners could not have remained at the West County Detention Facility, or another local facility with which the government contracts, until their hearings were completed. While the court understands it was not ICE's decision to terminate its contract, it seems no creative solution outside of an out-of-state transfer was seriously contemplated. But sometimes the easiest solution is not the best one.

In sum, this order should not interpreted as a judicial approval of ICE's decision to transfer Petitioners. While the court's application of the law compels it to dismiss this case, the law does not compel it to countenance an agency's action that is contrary to the norms of this country's justice system.

## III. ORDER

This action is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. All other matters are TERMINATED, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: August 31, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-05208-EJD
ORDER DISMISSING CASE

11